UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| TRACY STORY-MCPHERSON, *et al.*, | |
| Plaintiffs, | Case No. 2:11-CV-01470-KJD-RJJ |
| v. | **ORDER** |
| BANK OF AMERICA, N.A., *et al.*, | |
| Defendants. | |

Presently before the Court is Defendant's Motion to Dismiss (#4). Plaintiff filed a response in opposition (#7) to which Defendant replied (#9).

I. Background

In November of 2003, Plaintiffs Tracy Story-McPherson and Sterling G. McPherson purchased the property located at 28 Knightsboro Road, Henderson, Nevada 89014. Plaintiffs refinanced the property in December of 2003 through Defendant Bank of America, N.A.[1] The loan was secured by a recorded Deed of Trust, with PRLAP, Inc. ("PRLAP") designated as Trustee.

---

[1] This action was brought against both Bank of America, N.A., as well as BAC Home Loan Servicing, LP. However, Bank of America, N.A. is the successor in interest to BAC Home Loan Servicing, LP by merger. Accordingly, this action presents a single defendant.

In the spring of 2009, Plaintiffs began seeking to modify their loan due to financial hardship. On or about October 26, 2009, Defendant substituted Cal-Western Reconveyance ("Cal-Western") for PRLAP as Trustee under the 2003 Deed of Trust. On or about November 4, 2009, Cal-Western executed and recorded a Notice of Breach and Default. On November 13, 2009, Plaintiffs filed for Chapter 13 Bankruptcy protection. On December 7, 2009, Plaintiffs signed a loan modification agreement with Defendant, but Defendant did not sign the agreement until May 20, 2011. On February 4, 2010, Plaintiffs' bankruptcy action was dismissed for failure to appear. Plaintiffs allege that they then attempted to make payments under the modified loan agreement, but Defendant rejected those payments.

On April 12, 2010, Cal-Western executed and recorded a Notice of Trustee's Sale, setting the sale for May 10, 2010, at 10:00am. On or about May 3, 2010, Plaintiffs allegedly contacted Defendant and were told that they were "pre-approved" for a loan modification and that the foreclosure sale would be postponed. On May 10, 2010, Plaintiffs were allegedly visited by an unknown individual who informed them the sale would proceed at 10:00am. Within a few minutes, Plaintiffs contacted Defendant who informed Plaintiffs that they were still pre-approved for the loan modification, and that the measures to postpone the foreclosure sale had mistakenly been left incomplete. Plaintiffs were allegedly told that Defendant would contact Cal-Western to stop the sale. Later this same day, Plaintiffs contacted Defendant again and were told that the property had been placed for auction, but had not sold. However, the property was in fact sold that day, May 10, 2010. On May 11, 2010, Plaintiffs allegedly contacted Defendant once more, and were told that the property had been sold, but that the sale was in error and would be rescinded. However, the sale was not rescinded, and a Trustee's Deed Upon Sale was recorded May 24, 2010 in the name of Vadim Osipov.

///

///

///

II.  Discussion

A. Failure to Timely Respond

Defendant correctly notes that Plaintiffs filed their reply one calendar week after it was due (#7). Local Rule 7–2(d) provides that "[t]he failure of an opposing party to file points and authorities in response to any motion shall constitute a consent to the granting of the motion." D. Nev. R. 7–2(d). As the Ninth Circuit has held, "[f]ailure to follow a district court's rules is a proper ground for dismissal." Ghazali v. Moran, 46 F.3d 52, 53 (9th Cir. 1995); see, e.g., Grady v. BAC Home Loan Servicing, LP, 2011 WL 2680689, *1 (D. Nev. July 7, 2011). However, prior to dismissal for failure to follow local rules or for failure to prosecute, the Court must weigh five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases of their merits; and (5) the availability of less drastic sanctions." Ghazali, 46 F.3d at 53.

"[T]he public's interest in expeditious resolution of litigation always favors dismissal," Yourish v. California Amplifier, 191 F.3d 983, 990 (9th Cir. 1999). However, a one-week delay in Plaintiffs filing their Opposition in Response does not—in this instance—create more than a marginal interest in dismissal. Similarly, this delay has not substantively impacted this Court's docket. Further, this short delay is unlikely to result in any prejudice to Defendant, and Defendant has not alleged prejudice. In contrast, public policy strongly supports disposing of this case on its merits. Similarly, less drastic sanctions are available to this Court should they become necessary. On balance, these factors weigh in favor of Plaintiffs, who will exercise increased diligence throughout this matter.

B.  Judicial Notice

This Court takes notice of the undisputed public records provided by Defendant in accordance with Federal Rule of Evidence 201.

C.  Standard for Motion to Dismiss

In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." Wyler Summit P'ship v.

1  Turner Broad. Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted). Consequently, there is
2  a strong presumption against dismissing an action for failure to state a claim. Gilligan v. Jamco Dev.
3  Corp., 108 F.3d 246, 249 (9th Cir. 1997).

4      "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted
5  as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678,
6  (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a
7  motion to dismiss, means that the plaintiff has pleaded facts which allow "the court to draw the
8  reasonable inference that the defendant is liable for the misconduct alleged." Id.

9      Under Iqbal, the Court engages in two prongs of analysis. First, the Court identifies "the
10 allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations
11 which are legal conclusions, bare assertions, or merely conclusory. Id. at 1949-51. Second, the Court
12 considers these allegations "to determine if they plausibly suggest an entitlement to relief." Id. at
13 1951. If the allegations state plausible claims for relief, such claims survive the motion to dismiss. Id.
14 at 1950.

15     D.  Wrongful Foreclosure

16     Wrongful foreclosure occurs where: (1) the defendant exercised a power of sale or foreclosed
17 on the plaintiff's property; and (2) at the time of the sale or foreclosure, the plaintiff had not breached
18 a condition or failed to perform such that foreclosure or sale was authorized. Collins v. Union Fed.
19 Sav. & Loan Ass'n, 99 Nev. 284, 304, 662 P.2d 610, 623 (1983). Further, "the conduct of one party
20 to a contract which prevents the other from performing his part is an excuse for non-performance."
21 United States v. Peck, 102 U.S. 64, 65 (1880).

22     It is undisputed that Defendant exercised a power of sale and foreclosed on Plaintiffs'
23 property. However, Defendant alleges that Plaintiffs were in breach due to delinquent mortgage
24 payments. While Plaintiffs do not directly dispute this claim, neither do they concede it. Rather,
25 Plaintiffs allege that Defendant directly caused the breach by refusing Plaintiffs' payments. Accepting
26 the allegations of the complaint, Plaintiffs are plausibly entitled to relief for wrongful foreclosure as

Plaintiffs may be excused for a breach directly caused by Defendant. Finally, Defendant did not sign the modified loan agreement until 2011, though Plaintiffs signed it in 2009. This leaves the factual question of when the contract came into existence unclear. Accordingly, the motion to dismiss is denied as to wrongful foreclosure.

### E.  Negligent Misrepresentation

To claim negligent misrepresentation, a plaintiff must plead the following: (1) that a false representation was made, (2) that the representation was made in the course of a defendant's business or that the defendant had a pecuniary interest in the action, (3) that the representation was for the guidance of others in their business transactions, (4) that the plaintiff justifiably relied on a defendant's representation, (5) that this reliance resulted in pecuniary loss to the relying party, and (6) that the defendant did not exercise reasonable care or competence in obtaining or communicating the information. See G.K. Las Vegas Ltd. P'ship v. Simon Prop. Group, Inc., 460 F. Supp. 2d 1246, 1262 (D. Nev. 2006).

In compliance with Federal Rule of Civil Procedure 9(b), Plaintiffs have pled with particularity the necessary allegations. First, Defendant made four false representations to the Plaintiffs. On or about May 3, 2010, Defendant's employee Marlien informed Plaintiffs that the foreclosure sale would be postponed. On May 10, 2010, Defendant's employee Camilla informed Plaintiffs that she would contact Cal-Western to stop the foreclosure sale. On May 10, 2010, Defendant informed Plaintiffs that the property had not been sold. On or about May 11, 2010, Defendant informed Plaintiffs that the sale would be rescinded.

Second, Defendant had pecuniary interest in the action as the property secured the loan held by Defendant. Third, Defendant's representations were intended to guide Plaintiffs in their action relating to the sale of the property, resulting in Plaintiffs failing to cure or seek judicial relief from the sale. Fourth, Plaintiffs justifiably relied upon Defendant's representations as Defendant was the holder of the loan at issue. Fifth, this reliance damaged Plaintiffs in excess of $10,000. Sixth, Defendant failed to exercise reasonable care and competence in communicating its failure to

postpone the sale. Accordingly, the motion to dismiss is denied as to the claim for negligent misrepresentation.

### F. Negligence Per Se

In Nevada, a claim for negligence requires the plaintiff to satisfy four elements: "(1) an existing duty of care, (2) breach, (3) legal causation, (4) damages." Turner v. Mandalay Sports Entm't, LLC, 124 Nev. 213, 217, 180 P.3d 1172, 1175 (2008). Although often pled separately, a claim for negligence per se is not distinct from a claim for negligence, but is instead "a doctrine whereby a court will consider the negligence elements of duty and breach satisfied as a matter of law, leaving only causation and damages to be determined by the fact-finder." Insco v. Aetna Health & Life Ins. Co., 673 F. Supp. 2d 1180, 1191 (D. Nev. 2009). Negligence per se requires a plaintiff to show that: (1) a defendant has violated a regulatory statute, (2) the plaintiff is a member of the class of persons intended to be protected by the regulation, and (3) the resulting harm to the plaintiff is of the type the regulation is intended to prevent. Id. at 1191 (citing Ashwood v. Clark County, 113 Nev. 80, 86, 930 P.2d 740, 744 (1997).

Plaintiffs have failed to specify which sections of NRS ch. 107 Defendant has allegedly violated. Further, Plaintiffs have failed to allege specific conduct which would demonstrate a violation of the respective sections of NRS ch. 107. Accordingly, the motion to dismiss this claim is granted with leave to amend.

### G. Breach of Contract

Breach of contract claims require four elements: (1) a valid contract, (2) that the plaintiff performed or was excused from performance, (3) a defendant failed to perform, and (4) the plaintiff suffered economic damage as a result of the defendant's breach. See Bernard v. Rockhill Dev. Co., 103 Nev. 132, 135, 734 P.2d 1238, 1240 (1987).

Plaintiffs allege that they entered into a modified loan agreement in 2009. Further, Plaintiffs allege that either they were not in breach, or that they were excused from performance because Defendant refused Plaintiffs' payment. Plaintiffs also allege that Defendant breached contract by

foreclosing on the property under the terms of the 2003 loan agreement. Plaintiffs allege damages in excess of $10,000 as a result of Defendant's breach. Accepting the Plaintiffs' allegations, the motion to dismiss is denied as to the claim for breach of contract.

### H. Breach of Fiduciary Duty

The Court is "satisfied that the Nevada Supreme Court would hold that an arms-length lender-borrower relationship is not fiduciary in nature, absent exceptional circumstances." Yerington Ford, Inc. v. Gen. Motors Acceptance Corp., 359 F. Supp. 2d 1075, 1090 (D. Nev. 2004) rev'd on other grounds sub nom. Giles v. Gen. Motors Acceptance Corp., 494 F.3d 865 (9th Cir. 2007). Black's defines "fiduciary" as "[a] person who is required to act for the benefit of another person on all matters within the scope of their relationship; one who owes to another the duties of good faith, trust, confidence, and candor." Black's Law Dictionary (9th ed. 2009). Contract law would "dissolve if…an otherwise arm's-length business transaction" could be morphed into a fiduciary relationship based solely on the existence of a borrower-lender relationship. See Giles, 494 F.3d at 883-84.

Plaintiff has failed to plead exceptional circumstances which would transform the traditional borrower-lender relationship into one of fiduciary duty. Accordingly, the motion to dismiss is granted as to the claim for breach of fiduciary duty.

### III. Conclusion

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (#4) is **GRANTED in part**, and **DENIED in part.**

DATED this 5th day of June 2012.

_____
Kent J. Dawson
United States District Judge